Stewart D. Aaron (SA 1276)
Joseph B. Shumofsky (JS 2147)
DORSEY & WHITNEY LLP
250 Park Avenue
New York, NY 10177-1500
(212) 415-9200

Attorneys for
Plaintiff SCOTT-MACON SECURITIES, INC. and
Defendant SCOTT-MACON, LTD.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------- X

SCOTT-MACON SECURITIES, INC.,

Plaintiff, Civ. No. 04 CV 2124 (MBM)

-v-

ZOLTEK COMPANIES, INC.,

Defendant.

---------------------------------------------------- X

ZOLTEK COMPANIES, INC.,

Plaintiff,

Civ. No. 04 CV 4896 (MBM)

-v-

SCOTT-MACON LIMITED,

Defendant.

---------------------------------------------------- X

**SCOTT-MACON SECURITIES, INC.'S AND SCOTT-MACON, LTD.'S STATEMENT OF UNDISPUTED MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1 IN SUPPORT OF THEIR MOTIONS FOR SUMMARY JUDGMENT**

The following is a statement of the material facts as to which plaintiff Scott-Macon Securities, Inc. and defendant Scott-Macon, Ltd., for purposes of their motions, contend there is no issue to be tried, pursuant to Rule 56.1 of the Local Civil Rules of the U.S. District Court for the Southern District of New York:

1. Defendant Zoltek Companies, Inc. ("Zoltek" or the "Company") is a publicly traded company that specializes in the commercialization of carbon fiber as a primary composite building material. Zoltek was founded in 1975 by Zsolt Rumy ("Rumy"), the Chief Executive Officer of Zoltek. Today Zoltek has approximately 800 employees in six national and international offices and sales of approximately $80 million. Declaration of Stewart D. Aaron. in Support of Summary Judgment ("Aaron Decl.") ¶ 10, Ex. I (Zoltek Website); Deposition of Zsolt Rumy ("Rumy Depo.) pp. 12:3-14, 13:9-14:7.[1]

2. In 2003, Zoltek sought the assistance of investment bankers to help locate financing for the Company. Rumy Dep. pp. 14:8-15:5, 23:4-11; Deposition of Kevin Schott (Schott Depo.) pp. 11:20-12:1, 72:12-16.[2]

3. Plaintiff Scott-Macon Securities, Inc. ("Scott-Macon Securities") is an investment banking company that is a wholly owned subsidiary of Scott-Macon, Ltd., which was founded in 1973 by Mr. Alfred L. Scott. Among other things, Scott-Macon Securities does private placements and raises financing for its clients, especially in the amounts of $5 to $30 million, and has expertise in working with companies that deal with chemicals. Deposition of Alfred L. Scott ("Scott Depo.") pp. 5:4-7, 6:16-20, 7:16-22;[3] Deposition of Allan M. Benton ("Benton

---

1 The transcript from the deposition of Zsolt Rumy is attached to the Aaron Decl. as Ex. D. Exhibit D to the Aaron Decl. does not include the exhibits offered at the Rumy deposition unless they are exhibits that are also cited herein.

2 The transcript from the deposition of Kevin Schott is attached to the Aaron Decl. as Ex. E. Exhibit E to the Aaron Decl. does not include the exhibits offered at the Schott deposition unless they are exhibits that are also cited herein.

3 The transcript from the deposition of Alfred L. Scott is attached to the Aaron Decl. as Ex. A. Exhibit A to the Aaron Decl. does not include the exhibits offered at the Scott deposition unless they are exhibits that are also cited herein.

Depo.") pp. 10:22-11:3;[4] Deposition of Jeffrey M. Tepper ("Tepper Depo.") pp. 5:19-24, 16:15-22.[5]

4. On July 31, 2003, Rumy, on behalf of Zoltek, met with Allan M. Benton ("Benton"), Vice Chairman of Scott-Macon Securities, and Jeffrey M. Tepper ("Tepper"), Managing Director of Scott-Macon Securities, at the offices of Scott-Macon Securities in New York. Rumy Depo. 21:16-22:4; Scott Depo. pp. 22:22-23:2; Benton Depo. p.8:11-14; Tepper Depo. pp. 6:11-13, 9:14-22, 18:19-24.

5. Zoltek advised Scott-Macon that the deadline for securing financing for Zoltek was January 15, 2004, and Scott-Macon Securities understood that Zoltek was interested in obtaining necessary financing by that date. Rumy Depo. pp. 68:23-69:6; Benton Depo. pp. 40:18-41:2, 83:6-13; Tepper Depo. pp. 161:12-162:13.

6. On or about September 5, 2003, Zoltek and Scott-Macon Securities executed an engagement letter pursuant to which Zoltek hired Scott-Macon Securities as its exclusive placement agent to assist Zoltek in locating investors in the Company (the "Agreement"). Schott Depo. Ex. 15.

7. The Agreement included, inter alia, the following provisions:

a. Scott-Macon Securities was engaged as Zoltek's exclusive placement agent, id. at ¶ 1;

b. Zoltek would not initiate any discussions with respect to securing financing for the Company except through Scott-Macon Securities, id. at ¶ 2;

---

4 The transcript from the deposition of Allan M. Benton is attached to the Aaron Decl. as Ex. B. Exhibit B to the Aaron Decl. does not include the exhibits offered at the Benton deposition unless they are exhibits that are also cited herein.

5 The transcript from the deposition of Jeffrey M. Tepper is attached to the Aaron Decl. as Ex. C. Exhibit C to the Aaron Decl. does not include the exhibits offered at the Tepper deposition unless they are exhibits that are also cited herein.

c. Zoltek would "promptly inform" Scott-Macon Securities of any inquiry it received or interest it became aware of from a third-party regarding the possibility of investing in the Company, id.

d. Scott-Macon Securities was obligated to exercise reasonable efforts on behalf of Zoltek, id. at ¶ 3;

e. Scott-Macon Securities did not assure successfully securing financing for Zoltek, id. at ¶ 3;

f. Scott-Macon Securities would undertake, inter alia, the following services:

   i. Perform due diligence on the Company and its finances and recommend a structure for any secured financing, id. at ¶ 4(a);

   ii. Prepare an executive summary and confidential information memorandum in consultation with the Company, id. at ¶ 4(b);

   iii. Prepare a list of investors to be contacted by Scott-Macon Securities pursuant to its efforts to locate financing for the Company and provide Zoltek with a copy of such list, id. at ¶ 4(c);

   iv. Contact prospective investors on the prepared list and provide interested investors with a copy of the confidential information memorandum upon execution of a confidentiality agreement (unless waived by the Company), id. at ¶ 4(d);

   v. Coordinate meetings between potential investors and Zoltek, id. at ¶ 4(e);

   vi. Solicit proposals from interested investors, id. at ¶ 4(f).

g. The term of the Agreement was "for nine months and thereafter until the unilateral termination of [the Agreement] by either the Company or [Scott-Macon

Securities] upon at least thirty (30) days written notice to the other party," id. at ¶ 9;

h. For its services under the Agreement, Scott-Macon Securities would receive:

   i. an initial retainer, id. at ¶ 5;

   ii. monthly retainers for a total of three months, id. at ¶ 5;

   iii. reimbursed expenses, id. at ¶ 7;

   iv. a fee and warrants to purchase shares of Zoltek stock if the Company received financing during the term of the Agreement, id. at ¶ 6;

   v. a fee and warrants to purchase shares of Zoltek stock if the Company received financing, within eighteen months of termination of the Agreement, from an investor included on Scott-Macon Securities' list of investors provided to Zoltek within thirty days after termination of the Agreement, id. at ¶ 9(b);

i. That the Agreement was the complete agreement between the parties and superceded any prior understandings, agreements or representations between the parties, whether written or oral, id. at ¶ 17.

8. Prior to executing the Agreement, Zoltek received drafts of the Agreement and discussed the terms of the Agreement with its outside legal counsel, Thompson Coburn LLP, who had an opportunity to review a draft of the Agreement. Furthermore, on August 27, 2003, Rumy forwarded Thompson Coburn's comments on the draft of the Agreement to Scott-Macon Securities. Rumy Depo. pp. 48:23-49:1, 50:24-52:1, 52:20-23, 55:25-56:6 and Exs. 1, 16 at SMS 2267; Tepper Depo. Ex. R.

9. A number of times in the past, Rumy had needed financing and, on those occasions, negotiated and executed agreements with investment bankers and placement agents to assist with locating investors. Rumy Depo. pp. 146:18-147:8.

10. Prior to signing the Agreement, Rumy reviewed the final version of the Agreement. Rumy Depo. pp. 57:25-58:3.

11. Scott-Macon Securities provided Zoltek with proposed term sheets, suggesting the types of financing deals that Scott-Macon Securities believed Zoltek should pursue. Benton sent Rumy a letter, dated August 26, 2003, attaching proposed term sheets. Zoltek forwarded those proposals to its outside counsel, Thompson Coburn, and after receiving feedback regarding the term sheets from Thompson Coburn, shared those comments with Scott-Macon Securities. On September 23, 2003, Scott-Macon Securities sent revised term sheets to Zoltek. Rumy Depo. pp. 45:11-48:1 and Ex. 16 at SMS 2268; Schott Depo. pp. 70:22-24, 71:19-72:11; Tepper Depo. Ex. G-H, J.

12. In his August 26, 2003 letter to Rumy, Benton also solicited due diligence materials from Zoltek, including financial projections and cash flow statements. Tepper Depo. Ex. H.

13. On September 9, 2003, shortly following execution of the Agreement, Scott-Macon Securities visited Zoltek's offices in St. Louis, Missouri. Benton and Tepper met with Rumy and Kevin Schott ("Schott"), Zoltek's Chief Financial Officer, at Zoltek's offices, and discussed, inter alia, Zoltek's business, a general plan for raising financing for the Company, and drafting the confidential information memorandum. Rumy Depo. pp. 81:21-83:4; Schott Depo. 17:23-18:23.

14. Following the meeting in St. Louis, Scott-Macon Securities drafted a confidential information memorandum ("CIM") with the assistance of Zoltek to present to potential investors. Schott Depo. 124:16-24; Tepper Depo. pp. 52:15-54:18; 96:8-97:7 and Exs. D-F.

15. Scott-Macon Securities formulated a list of potential investors that Scott-Macon Securities believed would have an interest in investing in Zoltek. This list was modified and increased over time. Benton Depo. pp. 23:5-24:23; Tepper Depo. pp. 62:4-21, 94:8-17.

16. Scott-Macon Securities placed telephone calls to the investors on the contact list. If an investor expressed interest, Scott-Macon Securities sent out a "teaser," consisting of a concise overview of the executive summary contained in the CIM, and a confidentiality agreement to the investor. If the investor signed the confidentiality agreement (or if Zoltek waived the need for the confidentiality agreement), Scott-Macon Securities sent the investor the CIM. If a CIM was sent to an investor, Scott-Macon Securities followed-up with that investor with emails and phone calls. Benton Depo. pp. 38:5-12, 39:13-19; Tepper Depo. pp. 56:13-24, 63:16-64:2, 64:17-65-22, 105:15-106:14 and Exs. K and P.

17. Scott-Macon Securities maintained a log of all activity that was done to secure financing on behalf of Zoltek. The log was updated on a daily basis contemporaneously with the activity that Scott-Macon Securities performed. The log contained a list of the investors that Scott-Macon Securities contacted, the date that contacts were made and a description of the activity done. Benton Depo. pp. 20:12-24, 73:11-75:20; Tepper Ex. P.

18. Scott-Macon Securities also kept additional logs of who received CIMs and their level of interest in investing in Zoltek. Scott-Macon Securities sent out CIMs to 55 different potential investors. Tepper Depo. pp. 107:17-25, 108:18-109:2 and Ex. L.

19. Scott-Macon Securities kept Rumy up-to-date about its efforts to help secure financing for Zoltek and provided Zoltek with lists of the investor contacts being made on behalf of the Company. Rumy Depo. pp. 84:20-85:15, 90:16-21; Schott Depo. pp. 23:5-9.

20. Scott-Macon Securities began contacting potential investors on October 3, 2003 and ultimately contacted 263 potential investors. Tepper Depo. p. 113:7-22 and Exs. M and P at SMS 328, 332-33, 338, 341, 347-48, 350, 355, 358, 367, 375, 378-79, 384, 409, 417, 421, 431, 440, 457-58.

21. Pursuant to those contacts, Scott-Macon Securities arranged and coordinated eight in-person meetings with the following investors:

a. Angelo Gordon & Company on November 5, 2003 in New York;

b. The Huff Alternative Income Fund L.P. on November 6, 2003 in New Jersey;

c. Camden Partners on November 20, 2003 in Maryland;

d. Dimeling Schreiber & Park on November 20, 2003 in New York;

e. Pegasus Partners II Investors, L.P. on November 20, 2003 in New York;

f. ABS Capital Partners Management Company on November 21, 2003 in Massachusetts;

g. New England Partners on November 21, 2003 in Massachusetts; and

h. Resurgence Asset Management, LLC on November 21, 2003 in New York.

Rumy Depo. pp. 90:10-92:14; Tepper Depo. Ex. P at SMS 325, 333, 350, 363, 408, 415, 426, 446.

22. Rumy and Benton attended all eight meetings that Scott-Macon Securities coordinated on the Company's behalf. Rumy Depo. pp. 90:10-92:14; 93:6-9; Benton Depo. p 46:11-24.

23. Scott-Macon Securities recommended to Zoltek that Schott attend all of the in-person meetings but Schott never attended any of the meetings. Rumy Depo. pp. 153:12-154:6; Schott Depo. Ex. 13 at SMS 740; Scott Depo. pp. 30:12-32:6; Benton Depo. pp. 44:21-46-5.

24. Rumy never asked Schott, on behalf of Scott-Macon Securities, to attend the meetings with the investors. Rumy Depo. pp. 94:23-95:1.

25. Scott-Macon Securities also coordinated telephone conference calls with investors in an attempt to obtain financing for Zoltek. Rumy Depo. 201:24-202:5.

26. In December 2003, Scott-Macon Securities received term sheets concerning proposed investments in Zoltek from two investors that Scott-Macon Securities had contacted. On December 4, 2003, Scott-Macon Securities received term sheets from Cornell Capital Partners, L.P. ("Cornell"). On December 12, 2003, Scott-Macon Securities received term sheets from Ramius Capital Group, LLC ("Ramius"). Both sets of term sheets were forwarded to Zoltek. Schott Depo. pp. 85:7-86:9, 89:2-13 and Ex. 9; Tepper Depo. pp. 71:5-16, 118:3-119:20 and Exs. N, O, P at SMS 360 and 423.

27. Zoltek rejected the proposed term sheets from Cornell and Ramius without discussing the term sheets with Scott-Macon Securities or engaging in any negotiations with Cornell or Ramius. Schott Depo. pp. 87:7-15, 89:14-90:2; Benton Depo. p. 49:10-17.

28. At the same time that Scott-Macon Securities was expending efforts on behalf of Zoltek to secure financing, Zoltek was working with another placement agent. Schott Depo. p. 121:16-20.

29. In July 2003, Zoltek entered into an agreement with Equiplace Securities, LLC ("Equiplace") pursuant to which Equiplace would serve as Zoltek's non-exclusive placement agent to help locate and secure financing for the Company. The agreement between Zoltek and Equiplace provided that Equiplace would receive a fee for the successful completion of any

private placement with any investor that Equiplace introduced to the Company. The agreement between Zoltek and Equiplace did not include a termination date and was in effect on September 5, 2003. Zoltek primarily dealt with Paul Gorski ("Gorski") at Equiplace. Rumy Depo. pp. 14:20-16:10, 110:20-111:9; Aaron Decl. ¶ 11, Ex. J.

30. On October 16, 2003, Gorski of Equiplace contacted Scott Kaufman of Midsummer Capital LLC ("Midsummer") about the possibility of investing in Zoltek. Midsummer had an understanding that Equiplace was representing Zoltek in helping raise financing for the Company. Deposition of Michel A. Amsalem ("Amsalem Depo.") pp. 9:4-12, 12:6-15, 21:21-22 and Ex. A. at MSC 6.[6]

31. On October 20, 2003, Midsummer received a presentation relating to Zoltek. Amsalem Depo. pp. 10:17-12:5 and Ex. A at MSC 239.

32. On October 22, 2003, Midsummer had a conference call with Zoltek. Amsalem Depo. pp. 16:11-18:12.

33. On November 4, 2003, Midsummer received an email from Gorski inquiring whether Midsummer reviewed certain Zoltek materials that Gorski had forwarded to Midsummer and if Midsummer was interested in investing in Zoltek. Amsalem Depo. Ex. A at MSC 246.

34. G. Koppolow & Associates was a company in the business of finding potential investors for companies in need of financing. Gilbert Koppolow ("Koppolow") was the principal at G. Koppolow & Associates. Richard Scott Bader ("Bader") worked with Koppolow in

---

6 The transcript from the deposition of Michel A. Amsalem is attached to the Aaron Decl. as Ex. F. Exhibit F to the Aaron Decl. does not include the exhibits offered at the Amsalem deposition unless they are exhibits that are also cited herein.

locating potential investors for companies. Deposition of Richard Scott Bader ("Bader Depo.") pp. 9:23-10:22, 17:2-7.[7]

35. On October 17, 2003, Schott received a telephone call from Koppolow to inquire if Zoltek needed assistance with financing. Schott told Koppolow that Zoltek was actively seeking financing and would consider any proposals that Koppolow brought to Zoltek's attention. Schott informed Rumy of the telephone call from Koppolow, and Rumy advised Schott that he could pursue communications with Koppolow. Rumy Depo. p. 118:3-14; Schott Depo. pp. 30:13-31:11, 31:21-24; Bader Depo. pp. 14:18-15:6.

36. Rumy and Schott understood G. Koppolow & Associates to be a placement agent. Rumy Depo. p. 113:10-12; Schott Depo. 32:6-8.

37. Scott-Macon Securities was not informed about the telephone call from Koppolow. Schott Depo. p. 32:17-21.

38. Koppolow contacted Bader to ask for assistance with locating investors for Zoltek. Bader Depo. pp. 25:2-19, 80:15-22.

39. On October 31, 2003, Koppolow and Bader telephoned Omicron Capital L.P. ("Omicron") and spoke with Bruce Bernstein ("Bernstein"), Co-President of Omicron, to discuss the possibility of investing in Zoltek. Bader Depo. pp. 26:15-27:2, 33:21-33:24; Deposition of Bruce Bernstein ("Bernstein Depo.") pp. 7:17-25, 9:12-10:19.[8]

40. On November 3, 2003, there was a conference call between Zoltek and Omicron to discuss the possibility of Omicron investing in Zoltek. Schott, Bernstein, Koppolow and

---

7 The transcript from the deposition of Richard Scott Bader is attached to the Aaron Decl. as Ex. H. Exhibit H to the Aaron Decl. does not include the exhibits offered at the Bader deposition unless they are exhibits that are also cited herein.

8 The transcript from the deposition of Bruce Bernstein is attached to the Aaron Decl. as Ex. G. Exhibit G to the Aaron Decl. does not include the exhibits offered at the Bernstein deposition unless they are exhibits that are also cited herein.

Bader participated in the conference call. Schott Depo. pp. 32:23-34:9, 39:13-40:10; Bernstein Depo. p. 9:12-24.

41. On November 3, 2003, Omicron sent a proposed term sheet to Bader for investing in Zoltek. On November 4, 2003, Bader forwarded to Schott Omicron's proposed term sheet and a standard fee agreement. Bader Depo. pp. 33:21-34:8, 35:20-36:11, 39:21-24 and Ex. 25 at Koppolow 194-200; Schott Depo. pp. 40:25-41:7 and Ex. 3.

42. At the time, Zoltek did not advise Scott-Macon Securities that Zoltek received the proposed term sheets and did not forward the term sheets to Scott-Macon Securities. Schott Depo. pp. 41:21-23, 48:2-8.

43. On November 12, 2003, at Rumy's initiation, Omicron traveled to Zoltek's offices in St. Louis, Missouri to meet with the Company and conduct due diligence. Bernstein and Bruce Daly of Omicron met with Rumy, Schott, Koppolow and Bader in Zoltek's St. Louis office for several hours. The parties discussed an overview of Zoltek, and Omicron was provided with a tour of Zoltek's offices and facilities. Rumy Depo. pp. 118:15-119:21, 121:10-21; Schott Depo. p. 92:3-24; Bernstein Depo. pp. 12:9-13:21, 14:23-16:19.

44. Zoltek did not inform Scott-Macon Securities about Zoltek's November 12, 2003 meeting with Omicron. Schott Depo. pp. 92:25-93:5.

45. Omicron decided to invest in Zoltek and headed three financings for Zoltek: (a) a $7 million financing that closed in January 2004, (b) a $5.75 million financing that closed in March 2004, and (c) a $20 million financing that closed in October 2004. Rumy Depo. pp. 125:17-127:11; Schott Depo. pp. 94:17-95:9; Bernstein Depo. pp. 20:3-8, 20:18-21:9, 21:17-20.

46. Omicron invited Midsummer to participate in all three financings for Zoltek, and pursuant to that invitation, Midsummer decided to contribute to all three financings. Schott

Depo. pp. 94:25-95:4, Bernstein Depo. pp. 19:12-23, 20:18-21:9; Amsalem Depo. pp. 7:12-15, 14:8-22.

47. G. Koppolow & Associates was the placement agent for all three financings. Bernstein Depo. pp. 20:13-17, 21:17-20, 24:2-5; Schott Depo. p. 95:5-9.

48. Zoltek executed fee agreements with G. Koppolow & Associates with respect to each of the three financings. Rumy Depo. p. 113:13-23; Schott Depo. pp. 58:23-59:6, 64:35-65:24.

49. Zoltek complied with all payment obligations to G. Koppolow & Associates pursuant to the fee agreements, and G. Koppolow & Associates received fees in connection with all three financings. Bader Depo. pp. 67:7-68:5, 75:1-20, 83:13-17.

50. Pursuant to its efforts to locate financing for Zoltek, Scott-Macon Securities contacted Midsummer and Omicron to inquire about their interest in investing in the Company. Amsalem Depo. pp. 36:9-37:18; Bernstein Depo. pp. 26:11-28:6; Benton Depo. p. 64:15-24.

51. On December 5, 2003, Benton telephoned Amsalem at Midsummer to discuss the possibility of investing in Zoltek. Upon learning that the potential investment involved Zoltek, Amsalem advised Benton that he could not work with Scott-Macon Securities because he was already working with the Company to participate in an investment. Tepper Depo. Ex. P at SMS 405; Amsalem Depo. pp. 36:9-37:18.

52. On December 4, 2003, Benton telephoned Bernstein at Omicron to discuss the possibility of investing in a carbon fiber company. Bernstein expressed interest, and Benton said he would call back. On December 12, 2003, Benton telephoned Bernstein again and identified that the investment possibility would be with Zoltek. Once Bernstein knew that Benton was calling about investing in Zoltek, he ended the telephone call because Omicron already was in

discussions with the Company to invest. Tepper Depo. Ex. P at 413; Bernstein Depo. pp. 26:11-28:14.

53. On December 12, 2003, after speaking with Benton, Bernstein telephoned Bader to ask about Scott-Macon Securities' involvement in attempting to obtain financing for Zoltek. Bernstein was concerned that the Zoltek investment opportunity was being shopped to other investors. Bernstein Depo. pp. 29:15-30:2; Bader Depo. pp. 53:6-54:21.

54. Prior to receiving the telephone call from Bernstein regarding Scott-Macon Securities' representation of Zoltek, G. Koppolow & Associates and Bader had no knowledge of Scott-Macon Securities' relationship with the Company. Bader Depo. pp. 54:23-55:2, 76:12-19; Schott Depo. p. 60:3-23.

55. On December 12, 2003, Bader contacted Schott to express concern that Scott-Macon Securities had contacted Omicron and had some relationship with Zoltek. Schott Depo. pp. 73:18-74:17 and Ex. 8 at SMS 731.

56. On December 12, 2003, Schott sent an email to Bader stating, "As of this morning, Zsolt has shut down Scott-Macon [Securities] from talking to other potential investors. There should be no more problems." Schott Depo. Ex. 8 at SMS 731; Bader Depo. pp. 53:22-54:19.

57. Despite his representation in his December 12, 2003 email to Bader regarding Scott-Macon Securities, Schott never spoke with Rumy about Omicron's or Bader's concerns and was never told by Rumy that he "shut down" Scott-Macon Securities' efforts to secure financing for Zoltek. Schott Depo. pp. 78:21-79:14.

58. Schott represented to Bader that Rumy directed Scott-Macon Securities to end its efforts on behalf of Zoltek when that was not the case because Schott did not want Bader or Omicron to worry about Scott-Macon Securities' involvement. Schott Depo. p. 79:15-21.

59. Bernstein insisted that a disclosure addressing Zoltek's relationship with Scott-Macon Securities and any potential fee due to Scott-Macon Securities be included in the closing documents to be filed with the SEC. Bernstein Depo. pp. 31:6-35:12; Schott Depo. pp. 80:14-81:16.

60. Zoltek's counsel, Thompson Coburn, provided a draft of a disclosure regarding Zoltek's relationship with Scott-Macon Securities to Omicron's counsel, Bryan Cave. Bryan Cave forwarded the draft disclosure to Omicron. The disclosure represented that Zoltek believed that the Agreement with Scott-Macon Securities did not apply to the transactions with Omicron and that no fee would be due to Scott-Macon Securities in connection with the Omicron-led financings. Bernstein Depo. pp. 18:14-17, 31:6-35:12; Schott Depo. Ex. 8 at OC 16-18.

61. Receipt of the disclosure allayed Omicron's concerns regarding being contacted by a second placement agent with respect to investing in Zoltek. Bernstein Depo. 35:8-12. Omicron believes that the disclosure regarding Scott-Macon Securities was included in the documents filed with the SEC concerning each of the three Zoltek financings. Bernstein Depo. pp. 34:19-35:12, 39:23-40:15. No Zoltek related documents filed with the SEC mention Scott-Macon Securities. See, e.g., Zoltek's Form 10-K Filing with the SEC at Ex. 4.6 (see Aaron Decl. ¶ 12 Ex. K).

62. At the same time that Zoltek was working on the closing documents for the Omicron financing that closed in January 2004, it received the proposed term sheets from Scott-Macon Securities. Schott Depo. p. 88:1-23.

63. Even though Schott had represented to Bader and Omicron that Scott-Macon Securities had been "shut down," Scott-Macon Securities continued working on behalf of Zoltek to secure financing for the Company through December 2003 and January 2004. Schott Depo. pp. 95:20-24, 106:24-107:17.

64. In January 2004, Zoltek received telephone calls from Scott-Macon Securities about interested investors who wanted to provide financing to the Company and participate in the Omicron-led financings. Zoltek informed Scott-Macon Securities that it would discuss with Omicron whether Omicron wanted additional investors involved in the financing. Schott Depo. pp. 106:24-107:17.

65. On January 5, 2004, Rumy sent an email to Benton stating that Zoltek was aware that Scott-Macon Securities had represented that it knew of investors who wanted to "piggy back onto the Omicron financing" and that Zoltek was seeking Omicron's permission to include those investors in the transaction. Rumy requested from Benton a list of the potential investors and a list of all of the investors that Scott-Macon Securities had contacted on behalf of Zoltek. Rumy also stated that unless Scott-Macon Securities would waive its minimum fees as outlined in the Agreement, the potential investors could not be included in the Omicron financing. Rumy Depo. pp. 184:16-185:11 and Ex. 20.

66. On January 6, 2004, Benton sent a letter to Rumy advising him that Angelo Gordon & Company, with whom Rumy met with previously, Treeline Investment Partners and SF Capital were interested in investing approximately $6 to $6.5 million in Zoltek. Rumy Depo. pp. 189:17-190:25 a d Ex. 21.

67. On January 7, 2004, Benton sent to Rumy an email stating that Bluegrass Growth Fund Partners, L.P. was interested in scheduling a telephone conference call with Zoltek to discuss the possibility of investing in the Company. Rumy Depo. Ex. 22.

68. On January 8, 2004, Benton forwarded to Rumy a complete list of the investors that Scott-Macon Securities contacted in an effort to secure financing for Zoltek, which included Omicron and Midsummer. Tepper Depo. Ex. M.

69. On January 12, 2004, Benton sent an email to Rumy, informing him that Angelo Gordon & Company, Treeline Investment Partners, SF Capital, and Bluegrass Growth Fund Partners, L.P. were interested in investing in Zoltek on the same terms as the Omicron financing and that their combined investment would be between $6.5 and $9.5 million. Aaron Decl. ¶ 20, Ex. S.

70. On January 22, 2004, Benton sent a letter to Schott stating that Scott-Macon Securities still was interested in assisting the Company to secure financing and continued to have investors interested in coordinating their efforts with Omicron and Midsummer. Benton also inquired whether Zoltek had received permission from Omicron to include the Scott-Macon Securities' investor group in any financing. Rumy Depo. Ex. 23.

71. Scott Macon Securities has never received from Zoltek (a) payment of the December monthly retainer, (b) reimbursement of Scott-Macon Securities' allowable expenses, or (c) a fee or warrants to purchase shares of Zoltek stock for any of the financings that Zoltek accomplished with Omicron and Midsummer. Tepper Depo. pp. 74:12-75:5, 76:7-10, 170:13-15.

Dated: December 3, 2004

DORSEY & WHITNEY LLP

By:______________________________
Stewart D. Aaron (SA 1276)
Joseph B. Shumofsky (JS 2147)
250 Park Avenue
New York, New York 10177
(212) 415-9200

Attorneys for Plaintiff Scott-Macon Securities, Inc. and Defendant Scott-Macon, Ltd.